Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, & Johnson, P.C.
2999 Douglas Blvd., Ste. 111
Roseville, CA 95661
916-290-7778 ph
916-282-0771 fax

Attorney for Plaintiff
Kathy Thornburg

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| Kathy Thornburg<br><br>                 Plaintiff,<br><br>    v.<br><br>Experian Information Solutions, Inc.; Equifax Information Services, LLC; TransUnion, LLC; Cenlar FSB, First-Citizens Bank & Trust Company<br><br>                 Defendants. | CASE NO. 8:25-cv-00713<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act |

COMES NOW Plaintiff Kathy Thornburg (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

**INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), and 15 U.S.C. § 1681i(a)(5)(A)).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's mortgage account with Cenlar FSB

1

(hereinafter "CFSB") and First-Citizens Bank & Trust Company (hereinafter "FCB").

3. CFSB continues to report Plaintiff's account with an inaccurate and incomplete payment history – CFSB's tradeline appears to indicate that Plaintiff is not making her mortgage payments and has never made a mortgage payment.

4. CFSB also continues to report that Plaintiff's mortgage account is included/discharged in bankruptcy despite the account not being included or otherwise provided for in any bankruptcy proceeding.

5. Similarly, FCB, while reporting Plaintiff's account as open, refuses to report any type of payment history – despite Plaintiff making timely payments on the account.

6. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

7. Plaintiff's credit score has been adversely impacted by the reporting; she has been unable to rebuild her credit score and obtain favorable interest rates due to FCB and CFSB's inaccurate credit reporting.

8. Plaintiff has also been denied various extensions of credit.

9. Third parties have been exposed to the inaccurate and misleading tradelines identified herein.

10. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

11. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

12. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681.

13. The venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

14. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for accurate credit reporting in an attempt to purposefully undermine Plaintiff's attempt to improve her FICO Score.

15. In the alternative Plaintiff alleges that each and every Defendants' actions were the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

16. FICO is a leading analytics software company with its principal headquarters located in Montana. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

17. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

18. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

19. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

20. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

21. There are 28 FICO Scores that are commonly used by lenders.

22. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

23. The three largest CRAs are Experian Information Solutions, Inc.; Equifax Information Services, LLC, and Transunion, LLC.

24. FICO does not control what information is provided in a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

25. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

26. Each of the five factors is weighed differently by FICO.

27. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

28. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.

29. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently they occurred, and how many delinquent accounts exist.

30. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

31. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

32. A consumer's FICO score is negatively impacted when an account that is not included/discharged in bankruptcy continues to reflect an inaccurate and incorrect reporting status.

**Metro 2**

33. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

34. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

35. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

36. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

37. The CDIA is *the* expert on accurate credit reporting. In support of her allegations Plaintiff avers the following:

   a. The CDIA offers a FCRA certificate program for all CRAs.

b. The CDIA offers a FCRA awareness program for all CRAs.

c. The CDIA offers a FCRA Certificate program for DFs.

d. The CDIA offers a FCRA awareness program for DFs.

e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

38. The CDIA's Metro 2 is accepted by all CRAs.

39. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

40. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

41. The three main credit bureaus helped draft the CRRG.

42. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

43. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

44. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results.  If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

**e-OSCAR**

45. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax Information Services, LLC; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

46. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

47. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file.

**Transferring accounts**

48. A consumer's account(s) should tell a story and should have a beginning, middle, and an end.

49. When creditors improperly transfer accounts, a consumer's account story becomes disorganized, confusing, and as in Plaintiff's case, results in a consumer being incorrectly labeled less credit worthy because a debt no longer collectable still appears on Plaintiff's credit report in a collectable manner.

50. The CRRG's guidelines for transferring or selling accounts are simple but rarely followed.

51. There are two contemplated ways in which an account can be sold or transferred.

52. The first way results in a single trade line existing post-transfer, while the second way results in two tradelines appearing that contain an account's entire history i.e. traceability.

53. The preferred method, and most accurate way in which an account can be transferred or sold, is to simply convert / transfer all of the account history to the new servicer or owner.

54. Thereafter the original trade line is replaced with a new single tradeline with a new account number and new creditor listed but with all of the original servicer/owner's account history reported.

55. The second contemplated transfer method results in two trade lines. The original tradeline will report all of the account history up until the transfer/sale and the new account will pick up where the last account stopped. The original creditor must list who the new servicer/owner is and the new creditor must list the original creditor on the new trade line. Such reporting makes the debt traceable and allows future lenders a full and complete picture (story) of an account's history.

56. The CRRG does not contemplate, suggest, or otherwise imply a hypothetical outside of the two examples provided herein. Specifically, the CRRG does not contemplate a situation where accounts are simply transferred without all information being converted into a new account or a second traceable tradeline appearing on a consumer's credit report.

57. The CRRG is clear that the parties involved in the transfer or sale of accounts need to communicate to ensure accurate and complete reporting.

### Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator

58. When a consumer files for bankruptcy certain credit reporting industry standards exist.

59. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

60. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

61. Under Metro 2 the CII must be reported only to the consumer to whom the information applies.

62. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.
63. Chapter 7 has been filed, is active, but no discharge has been entered.
64. The CII Metro 2 Code "D" indicates that a petition for chapter 13 has been filed and is currently pending.
65. The CII Metro 2 Code "Q" is used for mortgage accounts that were not included/discharged in bankruptcy and were otherwise not affected by the chapter 13 plan.
66. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.
67. The lack of a reported CII makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.
68. Failure to report the correct CII indicator will prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

**Plaintiff's Bankruptcy**

69. Plaintiff filed for Chapter 13 bankruptcy protection on July 19, 2019 in order to reorganize her finances, improve Plaintiff's credit worthiness, and raise her FICO score.
70. Plaintiff completed the terms of her chapter 13 plan and received a discharge of those debts specifically provided for in her chapter 13 plan on March 11, 2024.
71. After completion of her bankruptcy Plaintiff ordered a credit report from Experian, Equifax, and TransUnion to ensure property reporting by Plaintiff's creditors.
72. Plaintiff noticed two tradelines on her post-chapter 13 credit report.

73. One tradeline related to an account with FCB and contained inaccurate bankruptcy information despite not including the FCB account in the chapter 13 plan or otherwise providing for it during the chapter 13 process.

74. The second inaccuracy was from CFSB.

75. CFSB was reporting Plaintiff's account as included/discharged in bankruptcy.

76. In response, Plaintiff disputed the inaccurate FCB and CFSB tradelines via certified mail with Experian, Equifax and TransUnion.

77. Plaintiff's dispute letter specifically put CFSB and the FCB on notice that Plaintiff's chapter 13 plan did not provide for those claims and that the accounts should not be reporting as included/discharged in bankruptcy.

78. Plaintiff is informed and believes that Experian, Equifax, and TransUnion received Plaintiff's dispute letter, and in response, sent Plaintiff's dispute to FCB and CFSB via an ACDV through e-OSCAR.

79. In August of 2024, after the statutory time period had passed for Plaintiff to receive a reinvestigation report from the CRAs, Plaintiff ordered supplemental credit reports from Experian, Equifax, and TransUnion for the sole purpose of ensuring Plaintiff's account with CFSB and the FCB had been properly updated.

80. The following inaccuracies were still present on Plaintiff's post-dispute credit reports:
    a. Experian: CFSB still reported the account as included and discharged in bankruptcy; provided no payment history on the account; and failed to indicate whether the account was transferred. FCB continued to report an inaccurate and incomplete payment history.

b. Equifax: : CFSB still reported the account as included and discharged in bankruptcy; provided no payment history on the account; and failed to indicate whether the account was transferred

c. TransUnion: CFSB still reported the account as included and discharged in bankruptcy; provided no payment history on the account; and failed to indicate whether the account was transferred. FCB continued to report an inaccurate and incomplete payment history.

**Inaccuracy – CFSB**

81. Plaintiff was frustrated to see that Defendant CFSB did not properly update the account.

82. Instead of updating the reporting to indicate that the account was not discharged in bankruptcy, CFSB confirmed to the credit reporting agencies that the bankruptcy notation was correct, despite Plaintiff not actually including/discharging the CFSB account.

83. As reported, it appears that Plaintiff sought to discharge her obligation to CSFB, which is incorrect.

84. To the extent that CSFB transferred the account, the tradeline is incomplete with respect to the details of the transfer.

85. CSFB failed to follow proper procedures regarding the transferring of mortgage accounts, which resulted in various misleading and incomplete tradelines on Plaintiff's credit report.

86. As reported, it appears that Plaintiff's payment history is derogatory and incomplete.

**Inaccuracy - FCB**

87. Similarly, FCB, despite receiving Plaintiff's timely mortgage payments, refused to update or otherwise provide any information regarding Plaintiff's timely payments.

88. FCB's current reporting makes it appear as if Plaintiff is not making any payments on her mortgage account and it is impossible for lenders to verify whether Plaintiff has made timely mortgage payments.

89. Instead of updating the payment history portion of the tradeline, FCB continued to report no information regarding the transaction history.

90. This, despite FCB receiving and processing timely payments from Plaintiff regarding the mortgage account.

**Damages**

91. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.

92. In addition, Plaintiff's fresh start has been irreparably harmed and continues to be harmed by the reporting of Defendants FCB and CFSB's tradelines as that reporting has been disclosed and disseminated to various third-party lenders.

93. Plaintiff has been denied credit on various occasions as a result of the CFSB tradeline and the harm its inaccurate reporting is causing to Plaintiff's credit score.

94. Until Defendants FCB and CFSB's reporting has been properly updated Plaintiff continues to appear a severe credit risk and Plaintiff will continue to be denied credit or otherwise only qualify for loans with an extremely high interest rate.

95. The actions of Experian, Equifax, TransUnion, FCB, and CFSB, as alleged herein are acts in violation of the Fair Credit Reporting Act.

**FIRST CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants)

**Experian, TransUnion, and Equifax – Failure to Assure Credit Reporting Accuracy**

96. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

97. Experian, TransUnion, and Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

98. Had Experian, TransUnion, and Equifax maintained reasonable procedures to assure maximum accuracy Experian, TransUnion, and Equifax would never have allowed Defendant CFSB to report the account as described herein.

99. As a result of Experian, TransUnion, and Equifax's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**Willfulness**

100. The violations described herein by Experian, TransUnion, and Equifax were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

101. Experian, TransUnion, and Equifax intentionally send consumer disputes to employees who do not live within the continental United States.

102. This is done intentionally to hide and or subvert a consumer's ability to confront individuals directly responsible for approving accurate reporting.

103. These employees for Defendants Experian, TransUnion, and Equifax receive little training concerning how to accurately report consumer debt.

104. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088

(D. Or. 2007); *Grigoryan v. Experian Info. Sols.*, Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols.*, No. CV 14-05276-AB (ASX)

105. Experian, TransUnion, and Equifax employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

106. Experian, TransUnion, and Equifax have intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

107. Experian, TransUnion, and Equifax also allowed Defendant CFSB to report incomplete account information despite knowing that Plaintiff was no longer in a bankruptcy proceeding.

108. Given that Experian, TransUnion, and Equifax all helped draft the CRRG, and Plaintiff specifically referenced industry guidelines in the dispute letter Experian, TransUnion, and Equifax knew that the CFSB and First Citizens accounts were not reporting in a manner consistent with industry standards i.e. inaccurate but chose to do nothing.

109. Further, Defendants Experian, TransUnion, and Equifax all reported the CFSB account with an incomplete payment history despite the account otherwise reporting as current.

110. Consequently, Defendants Experian, TransUnion, and Equifax are liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

111. In the alternative, Experian, TransUnion, and Equifax were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

112. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian, TransUnion, and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b) / 1681i(a)(1)) Against Defendants)

**CFSB and FCB – Failure to Reinvestigate.**

113. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

114. 15 U.S.C. §§ 1681s-2(b) and 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

115. Defendants FCB and CFSB violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

116. The CRAs provided notice to Defendants FCB and CFSB that Plaintiff was disputing the inaccurate and misleading information, but Defendants FCB and CFSB both failed to conduct a reasonable investigation of the information.

117. Based on Plaintiff's dispute, Defendants FCB and CFSB both should have known the reporting of the account without a complete and accurate payment history was false, misleading, and inaccurate.

118. CFSB also should have known its account was not included/discharged in bankruptcy.

119. To the extent the mortgage was sold/transferred, CFSB failed to report that information or otherwise make any updates to the tradeline that would accurately reflect the status of the account.

120. The most basic investigation would include a simple review its own records.

121. If Defendant CFSB had reviewed such records Defendant CFSB would have seen its reporting was not in compliance and consequently inaccurate and or incomplete.

122. Similarly, if FCB reviewed its own records in response to Plaintiff's dispute it would have recognized that Plaintiff was current and updated the payment history to reflect that fact.

123. Such an investigation would be reasonable, however the lack of investigation is unreasonable.

124. Plaintiff further alleges that Defendants FCB and CFSB has not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**Equifax, TransUnion, and Experian – Failure to Reinvestigate Disputed Information.**

125. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

126. After Plaintiff disputed the accounts mentioned above, Experian, TransUnion, and Equifax were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 U.S.C. § 1681i-(a)1.

127. Experian, TransUnion, and Equifax failed to conduct a reasonable investigation and failed to correct the misleading and/or inaccurate statements on the account within the statutory time frame or at all.

128. Plaintiff alleges that Experian, TransUnion, and Equifax have its own independent duty to conduct a reasonable investigation 15 U.S.C. § 1681i-(a)1.
129. Experian, TransUnion, and Equifax are not passive entities bound to report whatever information a data furnisher, such as Defendants, provides.
130. Plaintiff alleges that Experian, TransUnion, and Equifax are readily familiar with Metro 2 guidelines and credit reporting industry standards given that Experian, TransUnion, and Equifax helped draft said guidelines.
131. Given the aforementioned, Plaintiff alleges that Experian, TransUnion, and Equifax can and do suppress inaccurate information from being reported when DFs provide inaccurate information.
132. Experian, TransUnion, and Equifax can and do instruct DFs on how to properly report certain accounts from time to time upon request from the DF.
133. Experian, TransUnion, and Equifax failed to conduct a reasonable investigation because any basic investigation would have uncovered that certain DFs were not following credit reporting industry standards.
134. Experian, TransUnion, and Equifax therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.
135. Experian, TransUnion, and Equifax intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian, TransUnion, and Equifax's general policy are to simply parrot whatever information a data-furnishers sends.
136. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

## THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants)

**Experian, TransUnion, and Equifax – Failure to Review and Consider All Relevant Information.**

137. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

138. Experian, TransUnion, and Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

139. As a result of Experian, TransUnion, and Equifax's violations of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

140. The violations by Experian, TransUnion, and Equifax were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

141. In the alternative, Experian, TransUnion, and Equifax were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

142. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian, TransUnion, and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants)

**Experian, TransUnion, and Equifax – Failure to Delete Disputed and Inaccurate Information.**

143. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

144. Experian, TransUnion, and Equifax violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

145. As a result of Experian, TransUnion, and Equifax's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

146. The violations by Experian, TransUnion, and Equifax were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

147. In the alternative, Experian, TransUnion, and Equifax were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

148. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian, TransUnion, and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
2. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

3. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;
4. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
5. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o

Dated: April 8, 2025

**Gale, Angelo, & Johnson, P.C.**
*/s/ Joe Angelo*
Joe Angelo
Attorney for Plaintiff